**NOT FOR PUBLICATION**

```
              UNITED STATES DISTRICT COURT
                 DISTRICT OF NEW JERSEY


DONALD STILTON,                 :
                                :   Civil Action No. 07-3702 (JAG)
          Plaintiff,            :
                                :
     v.                         :        O P I N I O N
                                :
EAST JERSEY STATE PRISON,       :
et al.,                         :
                                :
          Defendants.           :
```

**APPEARANCES:**

    Donald Stilton, Plaintiff <u>pro se</u>
    548955/SBI #414011B
    East Jersey State Prison
    Lock Bag R
    Rahway, NJ 07065

**GREENAWAY, JR.**, District Judge

Plaintiff Donald Stilton, a prisoner currently confined at the East Jersey State Prison, Rahway, New Jersey, seeks to bring this action <u>in forma pauperis</u>, pursuant to 42 U.S.C. § 1983, alleging violations of his constitutional rights. Based on his affidavit of indigence and the absence of three qualifying dismissals within 28 U.S.C. § 1915(g), this Court will grant Plaintiff's application to proceed <u>in forma pauperis</u>, pursuant to 28 U.S.C. § 1915(a), and order the Clerk of the Court to file the Complaint.

At this time, this Court must review the Complaint to determine whether it should be dismissed as frivolous or

malicious, for failure to state a claim upon which relief can be granted, or because it seeks monetary relief from a defendant who is immune from such relief.

## BACKGROUND

Plaintiff states that during June of 2007, he submitted various legal mail to the East Jersey State Prison ("EJSP") mailroom for delivery. He also submitted "remits" so that the EJSP business office could deduct the funds for postage from his inmate account. (Compl. ¶¶ 1-42). However, defendant Mitchell, a senior corrections officer, opened and returned numerious pieces of legal mail to Plaintiff and refused to mail them. Mitchell voided all of the remits and stamped her name on the envelopes, and wrote "unauthorized at East Jersey State Prison Return to Sender" on them. (Compl. ¶ 43-54).

Plaintiff submitted a remedy form to grieve the opening, reading, and blocking of his outgoing legal mail. Defendant Kakos, the mailroom sergeant investigated the grievance and stated: "You sent out mail without stamps on the envelopes- When returned from the P.O. we must open the same to inspect it. Do not send future mail without stamps." Plaintiff argues that this response was fabricated to cover up defendant Mitchell's improper handling of his legal mail. (Compl. ¶¶ 55-57).

In June, K. Johnson, a corrections officer, was advised by defendant Mitchell to refuse to accept further legal mailings or

remits for postage from Plaintiff. Plaintiff inquired into the reasons for this ban. He was told by defendant Duda, the mail room officer, that Plaintiff had been sending out non-legal mail under the guise of legal mail in order to have the prison pay for the postage. Plaintiff alleges that defendant Duda was lying. (Compl. ¶¶ 61-63).

Later in June, Plaintiff met with defendant Kakos, who advised him that his mail was not being sent out because he "owed money to the prison and [Kakos] would not let me mail out anymore legal mail because [Plaintiff] was not working, and had no income to pay for [his] postage." Kakos told Plaintiff that Mitchell was permitted to open all <u>incoming</u> legal mail outside of his presence. Plaintiff showed Kakos copies of his inmate account revealing that he is a "Wing Porter" and he receives $46.00/month in inmate pay. He also showed Kakos envelopes that were opened indicating that the mail inside was legal mail. Kakos said that he would meet with defendant Executive Assistant Johnson to discuss the matter, and until a decision was made, no legal mail attached with remits would be permitted to leave the prison. (Compl. ¶ 66).

On June 29, 2007, Kakos informed Plaintiff that all of his legal mail was to be sent directly to Kakos, and Kakos would personally screen the mail and determine what may or may not be mailed out with remits. (Compl. ¶ 67).

In July of 2007, Plaintiff attempted to mail out various legal mail. (Compl. ¶¶ 68-77). Nine days after this mailing, Plaintiff was summoned for an interview by defendant Hampe, a lieutenant, and defendant Johnson. They had in their possession all of Plaintiff's outgoing legal mail. Defendant Johnson stated that he would not mail out the legal mail until Plaintiff provided him with a docket number for each case, a description of the case, and the merits of the case. Plaintiff listed the docket numbers but refused to give him any additional information. The defendants forced him to sign a document of some sort regarding the outgoing legal mail, which was at the direction of the Attorney General's Office. Defendants told Plaintiff that they were going to consult with the Attorney General's office concerning Plaintiff's legal mail. (Compl. ¶¶ 78-85).

Plaintiff was later told that the prison would not pay for any outgoing legal mail, and that until further notice, he could not mail pleadings out of the EJSP. (Compl. ¶ 86). Plaintiff states that he was denied the ability to mail out legal correspondence that addressed lawsuits against EJSP or others without just cause. Plaintiff claims that defendants are "picking and choosing" which legal mail they send out on his behalf. (Compl. ¶¶ 87-97). Without elaborating on the specific cases he has pending, Plaintiff asserts that there are pending

4

motions and interrogatories and other discovery matters that he cannot address because of his legal mail being blocked, and his cases are in jeopardy of being dismissed. (Compl. ¶¶ 106-109).

On July 19, 2007, sixteen pieces of his legal mail were returned to him by Kakos and Johnson nine days after he had attempted to deliver them. (Compl. ¶ 110).

Plaintiff states that the above incidents, including interfering with, censoring, opening, and refusing to mail his legal mail violate his constitutional rights. He seeks monetary damages and injunctive relief.

## DISCUSSION

### A. Standard of Review

In determining the sufficiency of a pro se complaint, the Court must be mindful to construe it liberally in favor of the plaintiff. See Haines v. Kerner, 404 U.S. 519, 520-21 (1972); United States v. Day, 969 F.2d 39, 42 (3d Cir. 1992). The Court must "accept as true all of the allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff." Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997). The Court need not, however, credit a pro se plaintiff's "bald assertions" or "legal conclusions." Id.

A pro se complaint may be dismissed for failure to state a claim only if it appears "'beyond doubt that the plaintiff can

prove no set of facts in support of his claim which would entitle him to relief.'" Haines, 404 U.S. at 521 (quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957)); Milhouse v. Carlson, 652 F.2d 371, 373 (3d Cir. 1981).

Where a complaint can be remedied by an amendment, a district court may not dismiss the complaint with prejudice. See Alston v. Parker, 363 F.3d 229 (3d Cir. 2004); Denton v. Hernandez, 504 U.S. 25, 34 (1992); Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002) (dismissal pursuant to 28 U.S.C. § 1915(e)(2)); Shane v. Fauver, 213 F.3d 113, 116-17 (3d Cir. 2000) (dismissal pursuant to 42 U.S.C. § 1997e(c)(1)); Urrutia v. Harrisburg County Police Dept., 91 F.3d 451, 453 (3d Cir. 1996).

**B.   Section 1983**

A plaintiff may have a cause of action under 42 U.S.C. § 1983 for certain violations of his or her constitutional rights.  Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress ... .

42 U.S.C. § 1983.  Thus, to establish a violation of § 1983, a plaintiff must demonstrate that the challenged conduct was

committed by (1) a person acting under color of state law and (2) that the conduct deprived him of rights, privileges, or immunities secured by the Constitution or laws of the United States.  See Parratt v. Taylor, 451 U.S. 527, 535 (1981), overruled in part on other grounds by Daniels v. Williams, 474 U.S. 327 (1986); Adickes v. S.H. Kress & Co., 398 U.S. 144, 152 (1970); Piecknick v. Pennsylvania, 36 F.3d 1250, 1255-56 (3d Cir. 1994).

**C.   Plaintiff's Complaint Will Be Dismissed.**

   1.   East Jersey State Prison Not Proper Defendant

   Plaintiff names the East Jersey State Prison as a defendant in this action.  However, the prison is not a "person" who may be sued pursuant to 42 U.S.C. § 1983.  See Will v. Michigan Dept. of State Police, 491 U.S. 58, 68-70 (1989) (holding that governmental entities considered "arms of the State" for Eleventh Amendment purposes are not "persons" within the meaning of § 1983); Grabow v. Southern State Correctional Facility, 726 F. Supp. 537, 538-39 (D.N.J. 1989) (stating that New Jersey Department of Corrections and state prison facilities not "persons" under § 1983).  Defendant East Jersey State Prison will be dismissed, with prejudice.

   2.   No *Respondeat Superior* Liability

   Plaintiff names Mike Powers, the Administrator of the Prison; Anne Milgram, the Attorney General of New Jersey

(improperly pled as "Anne Millner"); and Ernest Lee, an Ombudsman, and alleges that each of them is liable for violations of his constitutional rights.  Specifically, they "are responsible for the orderly running, and operation of the EJSP," and in Attorney General Milgram's case, "the orderly running, supervision, and operation of the Office of the Attorney General and its sub-parts and divisions thereof."  (Compl. § III.)  Plaintiff does not specify his claims against Ombudsman Lee.

Local government units and supervisors are not liable under § 1983 solely on a theory of respondeat superior.  See City of Oklahoma City v. Tuttle, 471 U.S. 808, 824 n.8 (1985); Monell v. New York City Department of Social Services, 436 U.S. 658, 690-91, 694 (1978) (municipal liability attaches only "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts" the alleged injury); Natale v. Camden County Correctional Facility, 318 F.3d 575, 583-84 (3d Cir. 2003).  "A defendant in a civil rights action must have personal involvement in the alleged wrongs, liability cannot be predicated solely on the operation of respondeat superior.  Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence."  Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988) (citations omitted).

In this case, Plaintiff has not alleged facts indicating any personal involvement by defendants Powers, Milgram, and/or Lee. This deficiency is fatal to Plaintiff's claim. The claims against these defendants will be dismissed, without prejudice.

3.  <u>Plaintiff's Interference with Mail Claims</u>

The constitutional right of access to the courts is an aspect of the First Amendment right to petition the government for redress of grievances. <u>See</u> <u>Bill Johnson's Restaurants, Inc. v. NLRB</u>, 461 U.S. 731, 741 (1983). In addition, the constitutional guarantee of due process of law has as a corollary the requirement that prisoners be afforded access to the courts in order to challenge unlawful convictions and to seek redress for violations of their constitutional rights. <u>See</u> <u>Procunier v. Martinez</u>, 416 U.S. 396, 419 (1974), <u>overruled on other grounds</u>, <u>Thornburgh v. Abbott</u>, 490 U.S. 401, 413-14 (1989). <u>See</u> also <u>Peterkin v. Jeffes</u>, 855 F.2d 1021, 1036 n. 18 (3d Cir. 1988) (chronicling various constitutional sources of the right of access to the courts).

In <u>Bounds v. Smith</u>, 430 U.S. 817, 828 (1977), the Supreme Court held that "the fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." The right of access

to the courts is not, however, unlimited. "The tools [that Bounds] requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement. Impairment of any *other* litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration." Lewis v. Casey, 518 U.S. 343, 355 (1996) (emphasis in original).

Moreover, a prisoner alleging a violation of his right of access must show that prison officials caused him past or imminent "actual injury." See Lewis, 518 U.S. at 348-55 and n.3 (1996); Oliver v. Fauver, 118 F.3d 175, 177-78 (3d Cir. 1997). As the Supreme Court explained, there is no:

> abstract, freestanding right to a law library or legal assistance, [and] an inmate cannot establish relevant actual injury simply by establishing that his prison's law library or legal assistance program is subpar in some theoretical sense.... [T]he inmate therefore must go one step further and demonstrate that the alleged shortcomings in the library or legal assistance program hindered his efforts to pursue a [non-frivolous] legal claim. He might show, for example, that a complaint he prepared was dismissed for failure to satisfy some technical requirement which, because of deficiencies in the prison's legal assistance facilities, he could not have known. Or that he had suffered arguably actionable harm that he wished to bring before the courts, but was so stymied by inadequacies of the law library that he was unable to file even a complaint.

See Lewis, 518 U.S. at 351.

In describing the scope of services which must be provided by the state to indigent prisoners, the Supreme Court has stated,

>  It is indisputable that indigent
> inmates must be provided at state
> expense with paper and pen to draft
> legal documents, with notarial services
> to authenticate them, and with stamps to
> mail them.... This is not to say that
> economic factors may not be considered,
> for example, in choosing the methods
> used to provide meaningful access. But
> the cost of protecting a constitutional
> right cannot justify its total denial.

Bounds, 430 U.S. at 824-25 (clarified on other grounds); see Lewis, 518 U.S. at 351.  Thus, "there is no First Amendment right to subsidized mail or photocopying. [Instead], the inmates must point to evidence of actual or imminent interference with access to the courts."  Reynolds v. Wagner, 128 F.3d 166, 183 (3d Cir. 1997).

The assertion that legal mail is intentionally opened and read, delayed for an inordinate period of time, or stolen, adequately states a First Amendment claim.  See, e.g., Antonelli v. Sheahan, 81 F.3d 1422, 1431-32 (7th Cir. 1996); Castillo v. Cook County Mail Room Dep't, 990 F.2d 304 (7th Cir. 1993).

The Court of Appeals for the Third Circuit has held that,

> a pattern and practice of opening
> properly marked incoming court mail
> outside an inmate's presence infringes
> communication protected by the right to
> free speech. Such a practice chills
> protected expression and may inhibit the
> inmate's ability to speak, protest, and
> complain openly, directly, and without
> reservation with the court.

Bieregu v. Reno, 59 F.3d 1445, 1452 (3d Cir. 1995) (applying the "reasonableness" analysis of Turner v. Safley, 482 U.S. 78, 89 (1987)), (implied overruling on other grounds recognized in Oliver v. Fauver, 118 F.3d 175, 177-78 (3d Cir. 1997)).  The Court of Appeals for the Third Circuit held recently that New Jersey prison regulations permitting the opening of legal mail outside an inmate's presence, to protect the health and safety of staff from potential anthrax exposure, impinged upon inmates' First Amendment rights.  See Jones v. Brown, 461 F.3d 353 (3d Cir. 2006).  A prisoner need not establish any consequential injury-in-fact to state such a First Amendment claim.  See id. at 358.

Moreover, in connection with a pending criminal matter, an accused has the right under the Sixth Amendment to the assistance of counsel.  See, e.g., Aswegan v. Henry, 981 F.3d 313 (8th Cir. 1992) (prisoners have the right to "any particular means of access"); Williams v. ICC Committee, 812 F. Supp. 1029 (N.D. Cal. 1992) (denial of legal telephone calls amounts to a constitutional violation only when prisoner has no access to attorney by mail or through visits).

Here, the Third Circuit's edict in Jones v. Brown concerning the opening of legal mail outside of Plaintiff's presence, lends legitimacy to Plaintiff's suit.  Specifically, Plaintiff's allegations that prison officials have engaged in a

12

pattern and practice of opening, censoring, and reading his legal mail outside of his presence, and picking and choosing what legal mail will be mailed, shall be permitted to proceed.

## CONCLUSION

Based on the foregoing, Plaintiff's claims against East Jersey State Prison, and defendants Powers, Milgram, and Lee will be dismissed.  Plaintiff's claims against the remaining defendants will be permitted to proceed.  An appropriate Order accompanies this Opinion.

                                         S/Joseph A. Greenaway, Jr.
                                         JOSEPH A. GREENAWAY, JR., U.S.D.J.

Dated:   December 18, 2007